MARIETTA HURTO, Appellant, v. NETTIE E. GRANT AND EMILY DANIELS.

Reformation of Deed: Laches. Where a mother wrongfully takes title to land belonging to a daughter and subsequently executes a deed to her reserving a life estate, which deed is received and kept by the daughter for ten years, the right to possession remaining undisturbed during that period, there is such *laches* that the deed will not be reformed by striking out the reservation of the life estate. (2)

Conditional Life Estate: Forfeiture. Said reservation was on condition that the mother keep the insurable interest of the daughter in the premises insured. The mother, in good faith, obtained a policy which inured to the mother's benefit, only. Her attention was not called to this nor demand for a proper policy made for ten years. *Held*, that the life estate was not forfeited. (3)

*Appeal from Scott District Court.*—HON. C. M. WATERMAN, Judge.

WEDNESDAY, FEBRUARY 7, 1894.

ACTION in equity for the partition of certain real estate, and for other equitable relief. From a judgment and decree in part denying plaintiff the relief prayed she appeals.—*Affirmed.*

*D. B. Nash* for appellant.

*Davison & Lane* for appellees.

KINNE, J.—I. The petition charges, in substance, that plaintiff is the owner of an undivided one half of certain real estate in Scott county, Iowa. That Nettie

E. Grant, defendant, owns the other undivided half of
said real estate. That prior to April 20, 1869, plaintiff
(then Marietta Wright) and her sister, Medora Wright,
owned certain land in fee, and inherited same from
their father's estate. That defendant Daniels (then
Wright) was the mother of plaintiff and Medora
Wright. That at said date, and acting for plaintiff and
said Medora, said defendant Daniels sold said land for
eleven thousand dollars, receiving the sum of six
thousand dollars in money, and a deed of conveyance
absolute in form to herself as grantee of a certain lot in
the city of Davenport for the balance of said purchase
price. That the deed was taken in defendant Daniels'
name without plaintiff's knowledge or consent. That
up to about 1880 she supposed the deed was in the
name of herself and her sister. That defendant Dan-
iels at all times represented that the deed had been so
executed as to protect her rights as an owner of the
premises, and plaintiff relied upon the truth of these
representations. That in 1880, after discovering that
the deed had been taken in the name of defendant Dan-
iels, her sister's husband, employed one W. K. White,
an attorney, to procure deeds from said Daniels to the
sisters for said lot, and on October 15, 1880, said White
procured said deeds. That said deeds contained the
following provision: "The above and foregoing con-
veyance, however, is made expressly upon the under-
standing and agreement that during my natural life,
while I remain unmarried, I shall be entitled to the
possession of said premises and enjoyment of the rents
and profits arising therefrom; provided, I shall at all
times keep the insurable part of said premises insured
in a reasonable amount for the benefit of those owning
such insurable interest; and also that I shall at all times
keep said premises in good reasonable repair; and also
that I shall at all times pay and discharge all taxes and
assessments against said premises, or any part thereof,

when due, all of which I do hereby covenant and agree to perform and do." That plaintiff was not present when said deed to her was executed by said Daniels. That she supposed such a deed would be executed as would vest in her title to the undivided half of said premises, and that she never agreed to take any other. She also claims that said condition in said deed "frustrates" the precedent estate, is inconsistent with it, and therefore void. She also charges that said Daniels has failed to comply with the conditions above set forth as to keeping the premises in repair, the property insured, and the payment of taxes; and avers that she has declared a forfeiture. She prays for a partition of the premises; that all claims of Daniels under said condition be adjudged void; that said deed be reformed, and plaintiff decreed to be the absolute owner in fee simple of an undivided one half of the lot. The answer of defendant Daniels admits that plaintiff and defendant Nettie E. Grant each own an undivided one half of the lot, subject to the right in her to use and occupy the same during her natural life; admits that prior to April 20, 1869, plaintiff and her sister, Medora, owned the farm, and that she is their mother; that she, acting for them, sold the farm, and in part payment received a deed to herself for the lot in controversy; admits that White procured deed as averred, and denies all other allegations in the petition. She avers she has been in possession of the premises since October 15, 1880, and is entitled to the rents and profits arising therefrom during her natural life; that she is and has been unmarried since October 15, 1880; pleads the conveyance to plaintiff, and her acceptance of the same, and that ever since October 15, 1880, she has received the rents and profits of the lot to her own use, with plaintiff's knowledge and consent; that ever since said time she has paid all taxes, kept the premises insured and in reasonable repair; and claims plaintiff is estopped from

claiming any interest in the premises in conflict with defendant's right of possession. Nettie E. Grant also filed an answer, in which she ratifies and confirms the defendant Daniels' acts, and the provisions of the deed from Daniels to herself. It is not material to more fully refer to it. The court found plaintiff to be the owner of an undivided one half of the lot, subject to Daniels' life estate, and ordered partition accordingly. To this plaintiff excepted, and appeals.

II.    Doubtless the defendant Daniels did wrong in selling the farm and taking the title to the city lot in her own name. She had no right so to do, but, in view of the subsequent acts of plaintiff in accepting the deed obtained by White from her mother, she ought not now to be permitted to repudiate its conditions. True, plaintiff claims she never accepted this deed. She knew that White was acting for her as well as for her sister. She had been told that if she did not obtain a deed for her interest, and her mother died, the daughter by a subsequent husband would also come in for a share in the lot. Her own testimony shows that she was willing for her mother to take all the rents and profits of the place which she might need for her support. From the whole record it is apparent that the real object of plaintiff was to get a deed to her undivided one half, so that her mother could not sell or incumber it, and so that, in the event of her death, no interest in this lot would pass to her mother's daughter by the second husband. Now, while the plaintiff says she never accepted this deed, her statement amounts to nothing, as she admits she received it, and kept it, and from October 15, 1880, to October 13, 1890, she did nothing to dispute the right of her mother's possession to the property under the terms of the deed until the latter date, when this action was commenced. When she did talk to her mother about the matter, she did not claim that the provision in the

deed giving her mother possession during her lifetime was wrong or unsatisfactory. What she complained of was that she should have so much of the rent as her mother did not need. We think plaintiff's own testimony tends strongly to show that after receiving this deed she ratified and confirmed it. Plaintiff was of age even before her mother sold the farm, and there is no sufficient excuse offered for her failing for almost ten years after this deed was executed to her to insist upon her rights. We think, under all the circumstances, that by not exercising her right, if she had any, for that length of time, and by virtually acquiescing in the correctness of the deed as made, she has been guilty of such laches as should preclude her from now having the deed reformed. There is no occasion for treating of the many cases cited by appellant relating to trusts.

III. One ground of plaintiff's claim is that even if the deed from defendant Daniels to her is not reformed by eliminating the provision therein relating to Daniels' life estate, then her life estate should be decreed to be forfeited because of failure to perform the conditions in relation to payment of taxes, repairs, and insurance. The main ground on which a forfeiture is claimed is touching the insurance. In that respect the deed provided that defendant Daniels "shall at all times keep the insurable part of said premises insured in a reasonable amount, for the benefit of those owning such insurable interest." Now, defendant Daniels has kept the property insured in the sum of one thousand, two hundred dollars. No fault is found that the amount of the insurance is not as great as it should be, but it is said that by virtue of the wording of the policy defendant Daniels' interest is insured, whereas the intent of the provision was to protect only the insurable interest of plaintiff and the defendant Grant, for their exclusive benefit. The policy insures "Marietta W. Hurto and

Nettie Grant," and, after the usual provisions, contains this condition: "Loss, if any, payable to Emily Daniels as her interest may appear." An elaborate argument is made to show that such a policy is not in accord with the provisions of the deed, and that the policy as written affords no protection to plaintiff for various reasons. There is no necessity for our entering into a discussion of all these questions. If the claim is well founded, it would not be a ground for declaring a forfeiture, in the absence of any showing that the plaintiff had called the attention of defendant Daniels to the form of the policy, and asked that a policy proper in form be taken out; and especially when, as in this case, it appears that Daniels has in good faith attempted to comply with the conditions of the deed relating to insurance. See *Mactier v. Osborn*, 146 Mass. 399, 15 N. E. Rep. 641; *Mills v. Seminary*, 15 N. W. Rep. (Wis.) 133. It would hardly comport with our idea of the duty of a court of equity to declare a forfeiture of Daniels' estate in the lots for a technical failure, if such it may be said to be, to comply with the provision touching insurance, when for nearly ten years plaintiff has made no objection to the form of the policies taken out by Daniels, and has never even suggested to the latter that the policies issued did not in all respects fully comply with her agreement. As to the conditions of the deed relating to the payment of taxes and to repairs, they seem to have been substantially complied with. In our view, no case has been made justifying a reformation of the deed, or warranting us in decreeing a forfeiture of the life estate of defendant Daniels. The judgment and decree below will be AFFIRMED.