# HENRY C. EMKEE AND ANOTHER v. ELIZABETH AHSTON AND OTHERS.[1]

March 28, 1918.

No. 20,724.

**Conveyance to child charged with payments to other children — their rights lost by reconveyance.**

In a transaction by which the parents conveyed certain real property to their son, in consideration of an agreement on his part to make provision for their support during the remainder of their lives, and also to pay certain specified sums of money to other children of the grantors, all of mature years but not parties to the contract, within six months after the death of the parents, which payments were declared by the contract liens upon the property until paid, it is *held*:

[1] Reported in 166 N. W. 1079.

That the provision for the payments to the other children was not founded upon a valuable consideration, was a mere incident to the main contract, created no irrevocable rights in such other children, and that the obligation to make the payments was discharged and the liens abrogated upon the rescission and abandonment of the contract by the parties thereto, and a reconveyance of the property to the parents.

Action in the district court for Steele county by the purchasers of certain land to determine the adverse claims of the defendants. The case was tried before Childress, J., who made findings and ordered judgment in favor or plaintiffs. From the judgment entered pursuant to the order for judgment, Celia Thietje, and other children of Jacob Kruger and his wife who were named in the deed mentioned in the first paragraph of the opinion, appealed. Affirmed.

*Leach & Leach,* for appellants.

*Nelson & Nelson,* for respondents.

BROWN, C. J.

Action to determine adverse claims to real property. Plaintiff had judgment and defendants appealed.

There is no controversy about the facts and they are substantially as follows: Jacob Kruger was the owner of the land, a farm consisting of 80 acres, upon which he had resided with his family for many years. On September 5, 1911, he conveyed the same, his wife joining therein, to his son Albert C. Kruger, in consideration of an agreement by the grantee to pay to the grantors the sum of $200 annually thereafter during the remainder of their lives, and to furnish them, or the survivor, each year a dressed hog weighing not less than 200 pounds. It was also provided that the grantee should pay to certain of the children of the grantors, brothers and sisters of the grantee, all of mature years and residing in homes of their own, certain specified sums of money, ranging from $5 to $300, within 6 months after the death of the grantors. These several sums were by the contract expressly made and declared liens upon the land until paid. The conveyance of the land was in the form of a warranty deed, the contract expressing the consideration therefor and creating the liens just mentioned was in writing, and both instruments were recorded in the office of the register of deeds. We assume that the

grantee took possession of the property, though the record is not clear upon the point. But there is no evidence that he ever performed any of the conditions of the agreement in consideration of which the land was conveyed to him.

On October 27, 1913, some two years later, the property was reconveyed by the grantee to the grantors, the conveyance being in the form of a warranty deed in which the consideration was expressed at one dollar "and other good and valuable consideration * * * in hand paid." Just what the other good and valuable considerations were does not appear. The deed bears date October 1, 1913, but was not executed and delivered until the twenty-seventh. Upon thus becoming reinvested with the title to the land the Krugers on the same day sold and conveyed the same to one Albert Schwake for the consideration of $10,600. The conveyance was with full covenants of warranty, and that the premises were free from all incumbrances. Thereafter, on the sixteenth day of March, 1914, Schwake and wife conveyed the premises to plaintiffs in this action for the consideration of $10,600. The deed contained a covenant that the premises were free from all incumbrances, except the liens created by the contract of support executed as a part of the first transaction herein referred to, "in case said liens have any validity."

The object of the action was to determine the validity of the liens and defendants interposed them in defense. The trial court held them invalid, and, aside from a ruling excluding certain evidence, the correctness of that conclusion is the only question presented by the appeal.

It is the contention of defendants that the transaction by which the liens were created, being founded upon a valid consideration, vested in them rights which the grantors could not revoke or recall, and that the trial court was in error in holding the liens of no force or effect. We do not concur in that view of the case.

It may be conceded that an executed transfer of property or an executed grant of a property right, whether in the form of a gift or founded on a valuable consideration, is beyond recall by the grantor, except for fraud and mistake, and cannot be revoked or canceled after acceptance by the grantee, and, when not burdened with conditions, a compliance with which is necessary to the vesting of of the granted right, acceptance will be presumed. Yet to be irrevocable and beyond recall the

transaction must be fully completed and in no essential respect left dependent upon the performance of future conditions. 12 R. C. L. 952. But the evidence does not bring this case within the rule. The conveyance of the property by the Krugers to the son Albert did not unconditionally vest title in the grantee. On the contrary the passing of full title was reserved and made dependent upon a performance of the conditions imposed by the support agreement, a failure of which would constitute a breach of the contract entitling the grantors to either an annulment of the conveyance, or to such other relief as might be appropriate to the facts presented. Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L.R.A.(N.S.) 608. The law in this respect is well settled in this state and the adjudications are referred to in the case cited.

The important inquiry is whether the lienholders became vested with rights which survived the rescission and abandonment of the contract by the immediate parties thereto. The question must be answered in the negative.

The primary purpose of the transaction was to secure to the grantors the stipulated support during the remainder of their lives. It was not in the interest of defendants, they were not parties to the contract, and were not thereby charged with the obligation imposed upon the grantee to support the grantors. In fact the annual payments required thereby would soon exceed the aggregate amount of the liens, thus making the burdens of the contract greater than the ultimate benefits, which presumptively the lienholders would not have assumed for the mere purpose of protecting the liens. So taking the transaction as a whole, it is clear that the purpose of the grantors was not to vest in the lienholders independent rights, but in a measure to equalize the distribution of their property after their death. The land was conveyed to the son for the consideration of $200 to be paid annually during the lives of the parents. The latter no doubt thought that it would be unfair to the other children not to give them some share in the property, hence the creation of the liens. But the grant was not beyond recall. There was no valuable consideration moving from the other children and they were charged with none of the burdens of the contract. While some evidence was offered which tends to show an intention on the part of the grantors to discharge some obligation for services rendered by them

when they resided at home, it is not of a character to require a finding that such was the purpose of the transaction. No finding was made 'upon the question. The evidence is not conclusive to that effect, and it necessarily follows that the creation of the liens was a mere incident to the main transaction, to stand or fall therewith. Whether a different question would be presented in such a case by a specific grant of an undivided interest in the land conveyed, to become effective after the death of the grantor, we do not stop to consider. Strothers v. Woodcox, 142 Iowa, 648, 121 N. W. 51.

That the parties abandoned and rescinded the contract is conclusively shown by the evidence. But whether by mutual consent or because of a breach of conditions, or both, does not clearly appear. But we may assume, in the absence of a showing to the contrary, that the basis thereof was a failure of performance by the grantee. If such was not the cause and the reason therefor was the accomplishment of some purpose illegal and violative of the rights of the lienholders, the burden was upon defendants to show the fact in support of their claim of an interest in the land. Walton v. Perkins, 28 Minn. 413, 10 N. W. 424. The case of Strothers v. Woodcox, supra, is not in point. In that case a defeat of the rights granted to third persons by a breach of conditions was expressly recognized.

2. There was no error in the exclusion of evidence offered for the purpose of showing that plaintiffs knew of the liens and purchased the property subject thereto. The contract of purchase was in writing and expressly referred to the liens with the statement that the title was incumbered thereby if they are of "any validity." In the face of this conditional liability, expressed by the written contract, no absolute liability verbally created could be shown.

Our conclusions are in harmony with those of the learned trial court and the judgment appealed from is affirmed.